**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

RICKEY D. CARNETT,

    Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

---

**Civil Action No. 12-1848 (CKK)**

**MEMORANDUM OPINION**
(February 24, 2015)

Plaintiff Rickey D. Carnett brings this action seeking review of the final administrative decision by Defendant Carolyn W. Colvin, in her official capacity as Acting Commissioner of Social Security,[1] denying the Plaintiff's claim for Disability Insurance Benefits pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the Plaintiff's [10] Motion for Judgment of Reversal, and the Defendant's [11] Motion for Judgment of Affirmance.[2]  Upon consideration of the pleadings, the administrative record, and the relevant legal authorities, the Court finds the administrative decision is not procedurally deficient and is supported by substantial evidence. Accordingly, for the reasons stated below, the Plaintiff's motion is DENIED and the Defendant's motion is GRANTED.

**I.  BACKGROUND**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin has been automatically substituted for Michael James Astrue, whom the parties' pleadings name as Defendant.

[2] On February 6, 2015, the parties filed a Joint Statement in response to this Court's Order indicating that no intervening events since the filing of their motions would render them moot and requesting that the Court proceed to resolve the pending motions.  Jt. Stmt. in Resp. to Court's Jan. 29, 2015 Order, ECF No. [13].

Plaintiff was born in August 1963 and, at the time of the hearing before the Administrative Law Judge ("ALJ") on August 21, 2009, had recently moved to Japan as his wife's job was transferred there.[3]   Administrative Record ("A.R.") 19, 47, 126.  Plaintiff is a high school graduate.  *Id.* at 36.  Plaintiff was trained as a carpenter and employed by the United States Air Force ("USAF") in varying capacities for the 15 years leading up to his claim for disability.  *Id.* at 38, 118.  Plaintiff was employed as a structural supervisor with the military from 1990 to 1992, and from 1994 to 1997.  *Id.* at 118.  In between that time, from 1992 to 1994, he was employed as a self help planner by the military.  *Id.*  From 1997 to 2001, Plaintiff served as a project manager on construction projects within the military.  *Id.*  Finally, Plaintiff was employed as a housing facilities supervisor at Travis Air Force Base in California from 2004 to 2005.  *Id.* at 44, 118.  Plaintiff has been unemployed since his retirement from the USAF on August 31, 2005, and also claims this as his date of disability in the instant action.  *Id.* at 39, 117.  After his retirement from the USAF, Plaintiff took some college courses at the New Jersey Institute of Technology, although he was in the process of attempting to transfer at the time of the hearing to the University of Maryland where he anticipated taking classes while living overseas.  *Id.* at 36-37.

On July 30, 2007, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning on August 31, 2005, due to multiple orthopedic and neurological problems, as well as depression.[4] A.R. 117.  To qualify for disability insurance benefits and supplemental security income, a claimant must demonstrate a disability, which is defined by the Act as an "inability to engage in

---

[3] Plaintiff filed Notice on February 2, 2015, with the Court indicating that he now resides in Plano, Texas.  Jt. Stmt. in Resp. to Court's Jan. 29, 2015 Order, ECF No. [13].

[4] The protective filing date of Plaintiff's application was June 13, 2007. A.R. 126.

2

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). In addition, a claimant seeking disability insurance benefits must have a severe impairment that makes him unable to perform past relevant work or any other substantial gainful work that exists in the national economy. *Id.* at § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Substantial gainful work activity is work activity that involves doing significant physical or mental activities and is the kind of work that is usually done for pay or profit. 20 C.F.R. § 404.1572(a)-(b).

In making a disability determination, the ALJ is required to use a five-step sequential analysis examining: (1) the claimant's recent work activity, (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairments are medically equivalent to those contained in the Listing of Impairments promulgated by the Social Security Administration, (4) the claimant's residual functional capacity and ability to perform past work, and (5) the claimant's ability to perform jobs reasonably available in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Blackmon v. Astrue*, 719 F. Supp. 2d 80, 82-83 (D.D.C. 2010). The ALJ is to consider (1) medical data and findings, (2) expert medical opinions, (3) subjective complaints, and (4) the plaintiff's age, education, and work history. *Blackmon*, 719 F. Supp. 2d at 88-89. The claimant bears the burden of proof with respect to the first four steps of the analysis, but at step five the burden shifts to the Social Security Administration to demonstrate that the claimant is able to perform "other work" based on his residual functional capacity, age, education, and past work experience. *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).

Plaintiff's application for a period of disability and disability insurance was denied both

initially and upon reconsideration.  A.R. 19.  Plaintiff then requested a hearing before an ALJ.
*Id.*  That hearing was held on August 21, 2009.  *Id.*  at 19, 33-69.  In a decision dated February
24, 2010, the ALJ, applying the five-step analysis, determined that Plaintiff was not disabled
within the meaning of the Act and denied the requested benefits.  *See generally id.* at 16-30.

At step one, the ALJ determined that Plaintiff  had  not  engaged  in  substantial  gainful
activity since August 31, 2005, the alleged onset date and also his date of retirement from the
USAF.  The ALJ noted that Plaintiff was attending college which was paid for by the U.S.
Department of Veterans Affairs ("VA").  *Id.* at 21.  At step two, the ALJ found that Plaintiff had
the following severe impairments: back disorder, left foot drop, and affective disorder. *Id.*

Step three of this analysis requires the ALJ to compare the claimant's impairments to the
Social Security Administration's Listing of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii).  If the
claimant's impairments meet or are medically equal to a listed impairment, the ALJ will find the
claimant is disabled.  *Id.*  The ALJ compared the Plaintiff's orthopedic impairments to Listing
1.04, and found that Plaintiff's impairments did not meet the criteria because there was no
evidence of persistent motor, sensory, or reflex loss, of sitting and supine straight leg raising or
of inability to ambulate effectively.  A.R. 22.  The ALJ also found that Plaintiff's impairments
did not meet the criteria of Listing 1.02, pertaining to major dysfunction of a joint, because there
was no evidence of an inability to perform fine or gross movements effectively.  *Id.*  Next, the
ALJ found that Plaintiff's mental impairments did not meet or medically equal the criteria of
Listing 12.04, because Plaintiff's mental impairment did not cause at least two "marked"
limitations or one "marked" limitation and "repeated" episodes of decompensation, each of an
extended duration was required under "Paragraph B."  *Id.*  Similarly, the ALJ found that the
"Paragraph C" criteria were not satisfied.  *Id.*

4

The ALJ next proceeded to determine the Plaintiff's "residual functional capacity" before moving to step four as required because Plaintiff's impairment did not meet or equal a listed impairment.   20 C.F.R.   § 404.1520(e).   As the ALJ explained, "[a]n individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments." A.R. 20-21.  The ALJ must make this determination based on all the relevant medical and other evidence in the case record.   20 C.F.R. § 404.1545(a)(1).  Ultimately, the ALJ found that Plaintiff had the residual functional capacity to perform light work except with no reaching overhead with the right dominant upper extremity and limited to simple routine low stress jobs.  A.R. 22.  In reaching this determination, the ALJ summarized Plaintiff's testimony during the hearing and the opinion evidence presented as part of the record.  *Id.* at 23-26.  Specifically, the ALJ considered the evidence related to: Plaintiff's multiple orthopedic injuries; cervical, lumbar and lower extremity pain; GERD and hypertension diagnoses; asthma; and mental distress, including his diagnosis of major depressive disorder secondary to his physical condition as well as the results of the psychiatric consultative examination that Plaintiff underwent at the request of the Social Security Administration. *Id.* at 24-25.   The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* at 26.  The ALJ found that Plaintiff's physical impairments were not of a severity that would prevent all work activity.  *Id.*

Turning to step four, the ALJ must consider the claimant's "residual functional capacity" and past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  With respect to Plaintiff, the ALJ found that Plaintiff could not perform his past relevant work as a carpenter, housing supervisor, or

planner because he was limited to simple, routine, low stress jobs.  A.R. 27.

Finally, step five requires the ALJ to "determine[] whether there is any other gainful work in the national economy that the claimant could perform notwithstanding his disability." *Blackmon*, 719 F. Supp. 2d at 83; *see* 20 C.F.R. § 404.1520(a)(4)(v).  The ALJ considered the testimony of the Vocational Expert ("VE"), which he deemed credible, who opined that given all the relevant factors, that Plaintiff would be able to perform the requirements of occupations such as a ticket seller (6,000 jobs regionally and 200,000 jobs nationally), hand packager (5,000 jobs regionally and 469,203 nationally), and assembler of small products (5,000 jobs regionally and 500,000 nationally).  A.R. 27-28.  The VE also opined that Plaintiff could perform sedentary jobs such as an addresser (1,800 jobs regionally and 100,000 nationally), pari-mutuel ticket checker (6,000 jobs regionally and 86,000 jobs nationally), and a sorter (2,000 jobs regionally and 10,136 jobs nationally).  *Id.* at 27-28.  Ultimately, the ALJ found that Plaintiff was "not disabled" under the Social Security Act from August 31, 2005 through the date of the decision, February 24, 2010, because, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  *Id.* at 28.  Accordingly, Plaintiff's request for Disability Insurance Benefits was denied because the ALJ found that Plaintiff was not disabled within the meaning of the Act.

The Plaintiff sought review of the ALJ's decision by the Appeals Council.  *Id.* at 13.  The Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision," meaning the ALJ's decision constitutes the Commissioner's final decision regarding Plaintiff's claim.  *Id.* at 2.  Having fully exhausted his administrative remedies, Plaintiff timely

filed suit in this Court.[5]

## II. LEGAL STANDARD

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (quoting *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989)).  A court will not disturb the determination of the Commissioner if it is based on substantial evidence in the record and the correct application of the relevant legal standards.  42 U.S.C. §§ 405(g), 1383(c); *Butler*, 353 F.3d at 999. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).  "The test requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Butler*, 353 F.3d at 999 (citation omitted).

In reviewing an administrative decision, a court may not determine the weight of the evidence nor substitute its judgment for that of the Commissioner if her decision is based on substantial evidence.  *Butler*, 353 F.3d at 999; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  "Because the broad purposes of the Social Security Act require a liberal construction in favor of disability, the court must view the evidence in the light most favorable to the claimant." *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000).  "The reviewing court must also determine whether credible evidence was properly considered." *Id*.  A reviewing court should not be left guessing as to how the ALJ evaluated probative material, and it is reversible error for an ALJ to fail in his written decision to explain sufficiently the weight he has given to certain probative

---

[5] Plaintiff was granted an extension of time to commence the instant action pursuant to an Order of Appeals Council from the Office of Disability Adjudication and Review of the Social Security Administration, rendering his filing of the instant action timely.  A.R. 1.

items of evidence.  *Id.*

### III.  DISCUSSION

On February 24, 2010, the ALJ determined that Plaintiff was not disabled within the meaning of the Act and denied his request for benefits.  *See generally* A.R. 16-30.  The ALJ determined that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  Plaintiff argues that the ALJ failed to base his decision on an adequate record because the evidence did not include medical records dating back to the inception of his injuries.  Plaintiff further argues that record supports a finding that he is disabled by raising specific objections to two pieces of evidence and pointing to evidence in the record that Plaintiff asserts is contrary to the ALJ's determination.  The Court shall first address the adequacy of the record.  Next, the Court shall address whether the ALJ's determination is substantially supported by the record and based on the correct application of the law, focusing first on Plaintiff's specific objections and then turning to the ALJ's analysis.

A.      *The ALJ's Decision Was Based on an Adequate Record*

Plaintiff first questioned the scope of the medical records included in the Administrative Record and consequently relied on by the ALJ.  Specifically, Plaintiff asserts that the ALJ should have considered medical records from the USAF dating back to the time of his injuries.  Plaintiff argues that these records "provide the history for the injuries and complications" in support his claim.  Pl.'s Mot. at 3, 12.  It appears that Plaintiff is arguing that the ALJ should have considered medical records prior to his retirement from the USAF on August 31, 2005, and similarly prior to the alleged date of the onset of his disability.  The Court finds that the ALJ made his decision on an adequate record for the reasons described herein.

"[A]n administrative law judge has the affirmative duty to investigate fully all matters at

issue and to develop the comprehensive record requisite for a fair determination of disability."
*Poulin v. Bowen*, 817 F.2d 865, 870 (D.C. Cir. 1987).  While this duty is heightened when the
claimant is not represented by counsel during the administrative process, Plaintiff here proceeded
with counsel at the administrative level.  *See id.*; *Tripp v. Astrue*, 864 F. Supp. 2d 120, 125
(D.D.C. 2012).  "Nevertheless, the ALJ has an obligation to develop a 'complete medical
history' that contains medical records covering the relevant period of disability."  *Tripp*, 864 F.
Supp. 2d at 125.  Pursuant to 20 C.F.R. § 404.1512(d), the Social Security Administration is
required to develop a claimant's complete medical history for at least the 12 months preceding
the month in which the application is filed unless there is a reason to believe that development of
an earlier period is necessary or unless the claimant states that his disability began less than 12
months before the filing of the application.  Complete medical history is defined as "the records
of [the claimant's] medical source(s) covering at least the 12 months preceding the month in
which [the claimant] file[s] [his] application." 20 C.F.R. § 404.1512(d)(2).

   In the instant action, Plaintiff's alleged disability date was August 31, 2005, and he filed
his application for a period of disability and disability insurance benefits on July 30, 2007, with
the protective filing date of June 13, 2007.  The ALJ considered medical records spanning from
October 25, 2005, through August 5, 2009.  *See* A.R. 957, 987-1158 (records current through
August 5, 2009).  Here, Plaintiff does not allege that the Social Security Administration failed to
develop his complete medical history of the 12 months preceding the filing of his application as
required by 20 C.F.R. § 404.1512(d).  *See also* 42 U.S.C. § 423(d)(5)(B) (indicating that the
Commissioner of Social Security "shall consider all evidence available in such individual's case
record, and shall develop a complete medical history of at least the preceding twelve months for
any case in which a determination is made that the individual is not under a disability").  Indeed,

it appears that the ALJ did consider all the medical records provided, including those outside of the 12 month period, starting approximately two months after the alleged beginning of Plaintiff's disability and covering nearly a four year period.

Instead, Plaintiff appears to argue that there is reason to believe that development of an earlier period is necessary. However, Plaintiff provides no specific argument as to this point and only appears to claim that such information would provide a useful history of his injuries and complications. The ALJ did in fact consider the history of Plaintiff's injuries, noting:

> [T]he record establishes that in December 2000, the claimant sustained multiple orthopedic injuries following a fall from a tree. Subsequently, in 2004, he underwent radio ablation for treatment of low back pain which resulted from an injury to his sciatic nerve. He also related pain in his hips, elbows, and knees. He has been treated with multiple courses of physical therapy and multiple pain medication since that time.

A.R. 24. Moreover, Plaintiff does not argue that the ALJ did not consider any early injuries and complications that should have been considered, but rather takes issue with the ALJ's determination as to the severity of those impairments which the Court shall discuss further *infra*. Accordingly, the Court cannot conclude that the ALJ should have developed Plaintiff's medical history prior to October 25, 2005 and, instead, finds that the ALJ's decision was based on an adequate record.[6]

> B. *The ALJ's Decision that Plaintiff is Not Disabled Is Supported by Substantial Evidence And Based on the Correct Application of the Relevant Legal Standards*

The Court must next determine whether the ALJ's analysis of Plaintiff's disability claim is substantially supported by the evidence and based on the correct application of the relevant legal standards. The Court shall first turn to the specific arguments raised by Plaintiff in his

---

[6] In support of this conclusion, the Court notes that the Administrative Record in this matter includes over 900 pages of medical records. *See generally* A.R. 175-197, 236-982, 987-1158.

motion and shall then consider the ALJ's analysis of Plaintiff's claim.  For the reasons described herein, the ALJ applied the correct legal standards and his decision was substantially supported by the evidence.

### 1.  Plaintiff's Specific Objections to ALJ's Analysis

The Court shall first address Plaintiff's specific arguments advanced in his motion with regard to the ALJ's decision and the evidence underlying that decision.[7]  Plaintiff asserts that the Physical Residual Functional Capacity Assessment was incorrect based on other information in the medical records.  Plaintiff also argues that the Mental Residual Functional Capacity Assessment should have included additional information regarding his mental impairments. Finally, Plaintiff argues that evidence in the medical records contradicts the ALJ's finding that Plaintiff is not disabled within the meaning of the Act.  The Court shall address each argument in turn.

First, Plaintiff takes issue with the Physical Residual Functional Capacity Assessment completed by Dr. Eden Atienza on April 3, 2008.  *See* A.R. 224-31.  Specifically, Plaintiff argues that the assessment of his ability to stand and/or walk, sit with normal breaks, push and pull, balance, kneel, crouch, crawl, reach, and speak is incorrect.  *See* Pl.'s Mot. at 4-6.  Further, Plaintiff asserts that the assessment fails to accurately reflect his environmental limitations. *See id.* at 6.  The Court finds Plaintiff's argument related to this assessment is without merit because the evidence cited by Plaintiff does not show any specific errors with the assessment.  Indeed,

---

[7] While the Commissioner in her brief indicates that Plaintiff did not cite directly to the Administrative Record rendering it difficult to discern what documents he referenced, the Court notes that Plaintiff in his Motion has cited to documents by referencing the document number as assigned through ECF and the page number.  *See* Def.'s Memo. at 12 n.4.  In referencing the documents cited by Plaintiff, the Court shall use the page number from the Administrative Record.

Plaintiff relied in part on his own testimony at the administrative hearing held over a year after the assessment was made, medical records from examinations after the assessment was compete, and his own statements as provided in his motion without citation to the record to support his argument that the assessment is inaccurate. *See* A.R. 57 (Plaintiff's testimony at the administrative hearing on August 21, 2009); *id.* at 986 (Report referencing noted dated June 5, 2008), 976 (Report dated May 30, 2008), 1104 (Report dated Apr. 11, 2008), 1099 (Report dated May 9, 2008); Pl.'s Mot. at 6 (providing specific objections to the Environment Limitations section of the Physical Residual Functional Capacity Assessment with no citations to Administrative Record). The Court cannot conclude that the assessment completed by relying on evidence that existed at the time it was made is inaccurate based on subsequent examinations and Plaintiff's own assertions about the proper findings.

To the extent that Plaintiff has cited some evidence in the record that predates the Physical Residual Functional Capacity Assessment, the Court notes that this information does not negate the findings in the assessment made by Dr. Atienza based on the doctor's professional opinion, nor does this evidence call into question the basis of the ALJ's determination.[8] Indeed, while the ALJ specifically gave controlling weight to the Physical Residual Functional Capacity

---

[8] Plaintiff points to a record indicating that he had right elbow tendonitis. Pl.'s Mot. at 5. However, the cited medical report specifically states with regard to that injury that Plaintiff is "resting and will get better on its own." A.R. at 1141 (Report dated January 4, 2008); *see also id.* at 956 (Report dated October 25, 2008). Further, the ALJ specifically noted the pain in Plaintiff's right elbow in his decision. *Id.* at 24. Plaintiff points to a record in support of his argument that the assessment should indicate that Plaintiff has limited motion due to a right shoulder injury. Pl.'s Mot. at 6 (citing A.R. at 202, Report dated March 24, 2008). However, the ALJ did find that Plaintiff was unable to perform work that involved reaching overhead with the right dominant upper extremity. A.R. at 22. Plaintiff also points to a record indicating that he had pain in his right hip and right leg. Pl.'s Mot. at 5 (citing A.R. at 1141, Report dated January 4, 2008). Similarly, the ALJ specifically discussed this report in his decision and noted that the report indicated that Plaintiff had "pain on movement of the right hip with normal range motion." A.R. at 24.

Assessment in reaching his decision regarding Plaintiff's residual functional capacity, the ALJ found that assessment was supported by the report of another medical professional, Dr. Ronald Banger, and by Plaintiff's treatment records from the East Orange VA Hospital.  *See* A.R. 26. Furthermore, the Court notes that it is clear that the ALJ's decision was based on the entire record including the Physical Residual Functional Capacity Assessment as well as all the medical records spanning both before and after the completion of the assessment.  *Id.* at 23 (noting that the ALJ has carefully read and considered all the evidence regardless of whether it was specifically cited in the decision); *see also id.* at 21, 22 (noting that the ALJ's decision is based on the entire record).  Accordingly, the Court concludes based on its independent review of the record that Plaintiff's objections to the Physical Residual Functional Capacity Assessment are without merit and do not demonstrate that the ALJ's finding was not supported by substantial evidence.

Next, Plaintiff argues that the Mental Residual Functional Capacity Assessment should include additional information about his mental impairments.  *See* Pl.'s Mot. at 24-25.  The ALJ considered the Mental Residual Capacity Assessment, which reflects that Plaintiff has major depressive disorder secondary to his physical conditions.  A.R. 25.  Plaintiff does not assert that this diagnosis is incorrect but argues that the assessment should expound on the specifics of his mental impairments with information contained in the record.[9]  The Court finds that the ALJ's

---

[9] Specifically, Plaintiff asserts that the assessment should reflect that he feels totally inadequate due to physical limitations, that he is guilty about not working, that he exhibits a marked decrease in activity level, that he has decreased interest in certain hobbies, that he has a bad temper, that he has difficulty concentrating, that he displays irritability, that he displays frequent anxiety, that he feels less confident than in the past, that he is reluctant to take on any new task, that he is frequently anxious, that he is uncomfortable in crowds, that he is depressed, that he participated in a mandatory anger management class, and that he has Mood D/O.  Pl.'s Mot. at 24-25.  Plaintiff does not provide specific citations, but does assert that this information

reliance on this assessment in addition to the records as a whole including an independent psychiatric consultative examination that Plaintiff underwent at the request of the Social Security Administration and Plaintiff's own testimony at the hearing, does not establish that the ALJ's determination was not substantially supported by the record or that the assessment itself is inaccurate. *Id.* at 25-26.

Finally, Plaintiff points to portions of his medical records to demonstrate that the ALJ's finding that he is not disabled is not substantially supported by the evidence. Indeed, the cited records establish that Plaintiff has received medical treatment for multiple medical issues and pain related to those issues. *See, e.g.,* Pl.'s Mot. at 9, 10, 14, 15, 18, 23 (chronic pain); *id.* at 9, 10, 11, 13, 14, 15, 20 (hip pain); *id.* at 9, 11, 13 (joint pain); *id.* at 9, 10, 13, 14, 15, 17, 20, 21, 23 (back pain); *id.* at 9, 10, 13, 18, 22 (pain in groin area); *id.* at 13, 17, 22 (elbow pain, right elbow tendonitis), *id.* at 17 (issues related to shoulder); *id.* at 17, 20, 22, 23, 24 (issues related to knee); *id.* at 20, 21 (foot drop); *id.* at 11 (arthritis); *id.* at 17 (osteoarthritis); *id.* at 14, 20, 24 (erectile dysfunction); *id.* at 14 (stress); *id.* at 12 (irritability); *id.* at 15, 19, 20, 22 (depression); *id.* at 15, 17 (Plaintiff's use of cane); *id.* at 17, 18, 20, 21, 22 (Plaintiff's use of brace); *id.* at 16, 18, 19 (Restless Leg Syndrome); *id.* at 17, 20 (GERD diagnosis); *id.* at 21 (spastic dysphonia); *id.* at 17 (allergic rhinitis); *id.* (chronic obstructive pulmonary disease); *id.* at 17, 20 (chronic laryngitis). However, the ALJ considered all of Plaintiff's medical records and specifically discussed many of the issues raised by Plaintiff in his motion along with other medical concerns not raised by Plaintiff in his motion. *See, e.g.,* A.R. 24 (hip pain); *id.* at 24 (joint pain); *id.* at 23, 24, 25 (back pain); *id.* at 25 (pain in groin area); *id.* at 24, 25 (elbow pain), *id.* at 24, 25 (issues related to shoulder); *id.* at 24 (issues related to knee); *id.* at 24 (foot drop); *id.* at 25 (osteoarthritis); *id.* at

is reflected in the medical records.

24 (Plaintiff's use of cane); *id.* at 25 (GERD diagnosis); s*ee also* A.R. at 25 (asthma); *Id.* (hypertension); *Id.* at 24 ("Outpatient treatment records dated October 2005 to May 2008 from East Orange VA Hospital show the claimant has been undergoing treatment for multiple illnesses involving gastrointestinal problems, orthopedic problems, respiratory problems and mental health problems."). To the extent that Plaintiff is arguing that the ALJ should have given more weight to certain records than others, the Court "may not reweigh the evidence and replace the [Commissioner's] judgment regarding the weight of the evidence with its own." *Brown v. Barnhart*, 370 F. Supp. 2d 286, 288 (D.D.C. 2005) (quoting *Jackson v. Barnhart*, 271 F. Supp. 2d 30, 34 (D.D.C. 2002)); *see also Stephenson v. Colvin*, No. EDCV 14–1250 JC, 2014 WL 7332019, at *4 (C.D. Cal. Dec. 18, 2014) ("The Court will not second-guess the ALJ's reasonable interpretation of the medical evidence based on plaintiff's currently-asserted, lay opinion pieced together from raw imaging data and some of the same findings underlying the examining physicians' opinions."). As discussed further next, a careful review of the evidence demonstrates that the ALJ's decision was substantially supported by the record and the ALJ applied the correct legal standards in making his determination.

## 2. Review of the ALJ's Analysis

The ALJ engaged in the requisite five-step sequential analysis examining disability claims. The Court shall address each step in turn.

### a. Step One

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 31, 2005, the alleged onset date and also his date of retirement from the USAF. A.R. 21. This finding is in Plaintiff's favor and neither party contests the finding. Further, the Court finds that this determination was supported by substantial evidence in the

record.

### b.  Step Two

At step two, the ALJ found that Plaintiff had the following severe impairments: back disorder, left foot drop, and affective disorder. *Id.*  This finding is in Plaintiff's favor and neither party contests this finding.  Further, the Court finds that this determination was supported by substantial evidence in the record.

### c.  Step Three

At step three, the ALJ considered the medical severity of Plaintiff's impairments by comparing the impairments to those listed in 20 C.F.R. § 404.1520.  20 C.F.R. § 404.1520(a)(4)(iii).  "Although plaintiff was diagnosed with certain impairments, 'for a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.'" *Beynum v. Barnhart*, 435 F. Supp. 2d 142, 146 (D.D.C. 2006) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 529 (1990)).  If a claimant has impairments that do not meet all the specified medical criteria in a particular listing, he may qualify for benefits by showing that his combination of impairments is equivalent to a listed impairment.  *Id.*  Here, the ALJ found that Plaintiff's orthopedic impairments and mental impairment did not meet the criteria of the pertinent listings (1.02, 1.04, and 12.04), and that the combination of Plaintiff's impairments did not meet or medically equal one of the listed impairments.  A.R. 22.  Plaintiff appears to object to both of these findings.  *See* Pl.'s Mot. at 8-25.  However, the Court finds that the ALJ's conclusion was substantially supported by the evidence for the reasons described herein.

Turning first to Plaintiff's orthopedic impairments, the ALJ found that Plaintiff's impairments did not meet the criteria of Listing 1.02 because "there is no evidence of an inability to perform fine and gross movements effectively."  *Id.*  Plaintiff must show, among other things,

16

that he is not able to ambulate effectively *or* that he is not able to perform fine and gross movements effectively with his upper extremities in order to meet the criteria of Listing 1.02. 20 C.F.R. § 404, subpart P, App'x 1, 1.02(A)-(B). "Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation *without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities*." *Id.* at 1.00B2b1 (emphasis added).   The regulations provide:

> *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk *without the use of a walker, two crutches or two canes*, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* at 1.00B2b2 (emphasis added).   Here, the medical records substantially support the ALJ's finding that Plaintiff is able to ambulate effectively as defined in the regulations.   As noted by the ALJ, the records reflect that Plaintiff uses a single point cane as an ambulatory assistive device.   A.R. 24.   Use of a single point cane does not meet the criteria of Listing 1.02 because a single point cane is not an ambulatory device that limits the functioning of *both* upper extremities. *Id.* 1004-05 (record dated May 21, 2009, noting that Plaintiff received an aluminum cane that was adjusted to his height), 1028-29 (same); *see also id.* at 225 ("Current evaluation ,

ambulate with out difficulty with left knee and left ankle brace.").

Plaintiff's impairments may also meet the criteria of Listing 1.02 if the medical records establish that Plaintiff is not able to perform fine and gross movements effectively with his upper extremities.  As the regulations explain:

> Inability to perform fine and gross movements effectively means *an extreme loss of function of both upper extremities*; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

*Id.* at 1.00B2c (emphasis added).   Here, the medical records substantially support the ALJ's finding that there is no evidence of an inability to perform fine and gross movements effectively as defined by the regulations.  The ALJ found that Plaintiff was not able to reach overhead with the right dominant upper extremity.  A.R. 22.  However, Plaintiff's limited use of *one* of his upper extremities does not meet the criteria of Listing 1.02.  *See id.* at 227 (indicating that Plaintiff had not established any manipulative limitations as required under Listing 1.02).

Turning next to Plaintiff's orthopedic impairments as compared to Listing 1.04, pertaining to disorders of the spine, the ALJ found that Plaintiff's impairments did not meet the criteria of Listing 1.04 because "there is no evidence of persistent motor, sensory or reflex loss, of sitting and supine straight leg raising or of an inability to ambulate effectively."[10]  A.R. 22.

---

[10] While the criteria of Listing 1.04 may also be met if Plaintiff is not able to ambulate effectively, the Court notes that as discussed *supra* the ALJ's conclusion that Plaintiff is able to ambulate effectively is substantially supported by the evidence. *See* 20 C.F.R. § 404, subpart P, App'x 1, 1.04(C).  Further, Plaintiff may meet the criteria of Listing 1.04 if he has "[s]pinal

In order to meet the criteria of Listing 1.04, the medical records must establish a disorder of the spine resulting in compromise of a nerve root or the spinal cord, coupled with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied *by sensory or reflex loss* and, if there is involvement of the lower back, *positive straight-leg raising test (sitting and supine)* . . .

20 C.F.R. § 404, subpart P, App'x 1, 1.04(A) (emphasis added).

As noted by the Commissioner in her brief and determined by the ALJ in his decision, the evidence supports a finding that Plaintiff does not meet the criteria of Listing 1.04. Def.'s Memo. at 17; A.R. 22. Specifically, the evidence does not support a finding that Plaintiff has nerve root compression causing motor loss (atrophy with associated muscle weakness or muscle weakness) coupled with by sensory or reflex loss and positive straight-leg raising test. *See* Def.'s Memo. at 17 (citing A.R. 202 ("Back: Flexion is 0 to 70 degrees, extension 0 to 10, lateral flexion to the left and right is 0 to 20 degrees bilaterally. There is pain on movement of the lower back. There was no pain in straight leg raising."); *id.* at 284 ("l/s no evidence of acute anterior wedge compression fractures nor retropulsed fragments, some minor chronic anterior wedge deformities of t11 and t12 segments. chronic schmorl's node formation involving anterior end plate endplate of 12 also present"); *id.* at 448 "("Motor: Tone: Normal . . . Atrophy: No"); *id.* at 505 (same); *id.* at 578 ("Inspection: Mild atrophy of entire LLE compared to RLE"); *id.* at 604 ("had much atrophy still some atrophybut [sic] moreso [sic] severe cramps . . ."); *id.* at 607

---

arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." *Id.* at 1.04(B). Neither party appears to assert that Plaintiff meets this requirement nor did the ALJ discuss it. Def.'s Memo. at 17. Further, the Court did not locate anything in the record that would support such a finding.

("Back Inspection: No objection deformity noted . . . LE: Inspection: Mild atrophy of entire LLE compared to RLE."); *id.* at 687 ("There is slight atrophy (? diffuse atrophy) on the lower extremity noted on the left quadriceps and also left gastroc and slightly on the left peroneal muscle. REFLEXES: The deep tendon reflexes are 2+ symmetrical on both upper and lower extremities including knee jerks 2+ symmetrical. Ankle jerk on the left was 1+ symmetrical; the right was 2+."); *id.* at 816 "("Motor: Tone: Normal . . . Atrophy: No"); *id.* at 889 ("Inspection: Mild atrophy of entire LLE compared to RLE"); *id.* at 946 (same).  Indeed, as the Commissioner indicates in her brief, "although, at times, there may be some mild deficits in these areas, there is not total atrophy or weakness, or total sensory or reflex loss; there also were examinations revealing normal results in these areas." Def.'s Memo. at 17.  The Court agrees with this assessment of the evidence.  A review of the evidence demonstrates that the medical records substantially supports the ALJ's finding that Plaintiff's impairments do not meet the criteria of Listing 1.04 when applying the relevant legal standards. With respect to both Listing 1.02 and 1.04, the Court further notes that the ALJ's determination was supported by two separate DDS physicians who reviewed the evidence and determined that Plaintiff's physical impairments did not meet the criteria of the Listings.  *See* A.R. 224-31, 984-86.

Turning to Plaintiff's mental impairment, the ALJ concluded that the impairment did not meet the criteria of Listing 12.04, which covers affective disorders.  Specifically, the ALJ found that Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04, because Plaintiff's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of an extended duration was required under "Paragraph B."

In order to demonstrate that a claimant's mental impairment meets the criteria of Listing

12.04, the claimant must, among other things, show that he has an affective disorder resulting in at least *two* of the following from "Part B": (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration.   20 C.F.R. § 404, subpart P, App'x 1, 12.04(B).   The medical records substantially support the ALJ's finding that Plaintiff's mental impairments do not meet the criteria of Part B. While the record substantially support the ALJ's finding that Plaintiff suffers from severe Affective disorder, the record does not demonstrate that Plaintiff meets any of the four additional requirements.  A.R. 21-22.  Indeed, the evidence in the record is consistent with the ALJ finding that Plaintiff had mild restrictions of activities in daily living; mild difficulties in social functioning; moderate difficulties with concentration, persistence or pace; and no episodes of decompensation.  *Id.* at 22, 26.  As the ALJ noted, "[t]reatment records have chronicled that other than a depressed mood, mental status examinations have repeatedly shown that the claimant was oriented to all three spheres."[11]  *Id.* at 25.  Accordingly, for the reasons described, the Court concludes that the ALJ's determination that Plaintiff's impairments did not meet the criteria of Listings 1.02, 1.04, and 12.04 is substantially supported by the evidence in the record.

### d.  Determination between Steps Three and Four

---

[11] If medical evidence does not support a finding as required under "Part B," claimant may alternatively meet the criteria of listing 12.04 by making a showing under "Part C."  The ALJ found that Plaintiff did not meet the requirements of Part C.  A.R. 22.  Plaintiff did not have episodes of decompensation as discussed *supra*, did not demonstrate an inability to function outside a highly supportive living arrangement as he was living independently with his family, nor is there evidence in the record to demonstrate that he had "a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate."  *See* 20 C.F.R. § 404, subpart P, App'x 1, 12.04(C).   Accordingly, the Court finds this conclusion is substantially supported by the record.

The ALJ next proceeded to determine the Plaintiff's "residual functional capacity" before moving to step four as required because Plaintiff's impairment did not meet or equal a listed impairment. 20 C.F.R. § 404.1520(e). One's residual functional capacity is defined as the most one can still do despite his impairments and any related symptoms, including pain. 20 C.F.R. § 404.1545(a)(1). In order to make this determination, the ALJ is required to consider all relevant evidence in a claimant's case record, and must consider one's ability to meet the physical, mental, sensory, and other requirements of work. *Id.* at § 404.1545(a)(1) & (4).

Here, the ALJ found that Plaintiff had the residual functional capacity to perform light work except with no reaching overhead with the right dominant upper extremity and limited to simple, routine, low stress jobs. A.R. 22. In reaching this finding, the ALJ specifically considered the testimony of Plaintiff. While Plaintiff testified to greater limitations than the ALJ ultimately found, the ALJ specifically found that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but [] the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* at 26. The ALJ found that the degree of debilitating symptoms as testified to by Plaintiff was not supported by the evidence. *Id.* Indeed, the ALJ based this finding in part of Plaintiff's own testimony and the ALJ's observations at the hearing:

> On a typical day, he tries to help his wife clean the house, folds clothes, and bicycles every day. He can ride for approximately 45 minutes, walk approximately 30 minutes before he has to stop, stand for approximately 30 minutes, sit for about an hour, and lift up to 40 pounds. When asked if he was offered a job where he could sit for six hours in an 8 hour day, where he could get up and stretch, he responded that he hoped he could do it. He is also treated with antidepressant medication, which is also supposed to help his nerve pain in the left leg. His condition makes him nervous. The pain he feels and the medication he takes contributes to his depression.

*Id.* at 23.   The ALJ found that Plaintiff barely used his cane at the hearing and was well-organized with a notebook containing his materials.   *Id.* at 25.   Furthermore, the evidence in the record, as the ALJ noted, supports Plaintiff's ability to take care of his personal needs, help care for his daughter, take his daughter to daycare, study, and drive.   *Id.* at 26.   The ALJ also considered the medical evidence to determine whether it supported Plaintiff's contentions related to the degree of severity of his limitations, and ultimately found that the medical evidence related to both his physical and mental impairments did not support such a finding.   *See id.* at 23-26. However, the ALJ noted that it is clear from the record that Plaintiff experiences some pain and limitations.   *Id.* at 26.   Nonetheless, the ALJ found that the excessive limitations in daily living testified to by Plaintiff were not supported by the evidence as a whole.

Here, the ALJ's credibility determination was expressly made based on the whole record and explained in his decision.   *See Phoenix v. Colvin*, No. 14 Civ. 4164(AJP), 2015 WL 451016, at *18 (S.D.N.Y. Feb. 4, 2015) ("When ruling that a claimant is not entirely credible, the ALJ must provide 'specific reasons for the finding on credibility, supported by the evidence in the case record.'").   As another judge in this district has noted, "'In evaluating complaints of pain, an [ALJ] may properly consider the claimant's credibility.   The ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor.'" *Thomas v. Astrue*, 677 F. Supp. 2d 300, 308 (D.D.C. 2010) (quoting *Infantado v. Astrue*, 263 Fed.App'x 469, 475 (6th Cir.2008)); *see also Brown v. Bowen*, 794 F.2d 703, 706 (D.C. Cir. 1986) ("While contradictory evidence may exist, such credibility determinations are for the factfinder who hears the testimony . . . .").   The Court will defer to the ALJ's credibility determination because it is adequately explained in his decision and substantially supported by the record.   Further, the Court finds that the ALJ's determination that Plaintiff's residual

functional capacity to perform light work except with no reaching overhead with the right dominant upper extremity and limited to simple, routine, low stress jobs is substantially supported by the record.[12]

### e. Step Four

Turning to step four, the ALJ considered the claimant's "residual function capacity" and determined that he was not capable of performing his past relevant work pursuant to 20 C.F.R. § 404.1520(a)(4)(iv).  A.R. 27.  This finding is in Plaintiff's favor and neither party contests the finding.  Further, the Court finds that this determination was supported by substantial evidence in the record.

### f. Step Five

Finally, step five requires the ALJ to determine whether Plaintiff is capable of making a successful adjustment to gainful work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *see also id.* at § 404.1569.  In making this determination, the ALJ must consider Plaintiff's residual functional capacity assessment together with vocational factors such as Plaintiff's age, education, and work experience.  *Id.* at 20 C.F.R. § 404.1520(g).  Here, the ALJ's finding that there are jobs that exist in significant numbers in the national economy

---

[12] Light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

that Plaintiff can perform was substantially supported by the evidence in the record including the testimony of the VE. The ALJ credited the testimony of the VE who opined that given all the relevant factors, that Plaintiff would be able to perform the requirements of occupations such as a ticket seller (6,000 jobs regionally and 200,000 jobs nationally), hand packager (5,000 jobs regionally and 469,203 nationally), and assembler of small products (5,000 jobs regionally and 500,000 nationally). A.R. 27-28. The VE also opined that Plaintiff could perform sedentary jobs such as an addresser (1,800 jobs regionally and 100,000 nationally), pari-mutuel ticket checker (6,000 jobs regionally and 86,000 jobs nationally), and a sorter (2,000 jobs regionally and 10,136 jobs nationally). *Id.* at 27-28. The ALJ found the VE's testimony to be consistent with the information contained in the Dictionary of Occupational Titles. *See* SSR-00-4p (requiring the ALJ to determine whether a VE's testimony is consistent with the Directory of Occupational Titles).

Accordingly, the Court finds that the determination of the ALJ that Plaintiff was "not disabled" under the Social Security Act from August 31, 2005 through the date of the decision, February 24, 2010, because, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy is both substantially supported by the evidence and based on a correct application of the relevant law. *See id.* at 28. Indeed, the Court finds that the ALJ weighed all the evidence in the record and applied the correct legal standards to reach his determination.[13] As a result, the Court shall deny Plaintiff's request for a judgment

---

[13] The Court notes that Commissioner provided an accurate Index along with the Administrative Record that reflects the extensive number of documents considered by both the ALJ and the Court in this action. *See* Court Tr. Index, ECF No. [7-1]. As the Index provides, the Administrative Record contains: Extension Of Time to File Civil Action Notice (EXTCIVIL),

of reversal, and shall grant Defendant's request for a judgment of affirmance.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision was not procedurally deficient and is supported by substantial evidence. There is substantial evidence in the record that Plaintiff's severe impairments are back disorder, left foot drop, and affective disorder, and that the Plaintiff's impairments do not meet or equal the relevant listing of impairments. The ALJ properly detailed the assessment of the Plaintiff's residual functional capacity, and properly analyzed certain opinions offered by the experts. Finally, the ALJ properly decided that Plaintiff

---

dated 01/24/2013; AC Denial (ACDENY), dated 08/14/2012; AC Correspondence (ACCORR), dated 01/24/2012; Request for Review of Hearing Decision/Order (HA 520), dated 04/23/2010; ALJ Hearing Decision (ALJDEC), dated 02/24/2010); Transcript of Oral Hearing (TRANHR), dated 08/21/2009; Hearing Notice (507), dated 07/21/2009; Outgoing ODAR Correspondence (OUTODARC), dated 07/08/2008; Request for Hearing Acknowledgement Letter (HRGACK), dated 07/08/2008; Request for Hearing by ALJ (501), dated 06/27/2008; Disability Determination Transmittal (831), dated 06/23/2008; Reconsideration Notice – Letterhead (L976), dated 06/23/2008; Disability Determination Transmittal (831), dated 04/03/2008; T2 Notice of Disapproved Claim (L443), dated 04/03/2008; Misc Jurisdictional Documents/Notices (MDF B), undated; DISCO DIB Insured Status Report, dated 06/23/2009; Detailed Earnings Query, dated 06/23/2009; Disability Report – Adult, undated, from claimant; Disability Report – Field Office, dated 07/30/2007, from claimant; Work History report, dated 09/03/2007, from Claimant; Function Report – Adult, dated 09/03/2007, from Claimant; Disability Report – Appeals, undated, from claimant; 3rd Party Function Report – Adult, dated 05/06/2008, from Sadami Carnett/wife; Function Report – Adult, dated 05/06/2008, from claimant; Disability Report – Appeals, dated 06/25/2008, from claimant; Medications, undated, from clmnt; Representative Brief, dated 02/04/2012; Medical Report, dated 05/02/2006, from Steven G. Somogyi, MD; Outpatient Hospital Records, dated 11/22/2005 to 01/08/2007, from UMDNJ-RWJ Univ Behav Hlth; CE Report Psychiatry, dated 2008-03-03 to 03/03/2008, from Pradip Gupta MD; CE Report Orthopedic, dated 2008-03-24 to 03/24/2008, from Ronald Banger, MD; Initial DDS Disability Worksheet, dated 08/01/2007 to 04/03/2008, from DD; Initial Psychiatric Review Technique, dated 04/03/2008, from Michael D'Adamo, PhD; Initial Physical RFC Assessment, dated 04/03/2008, from Eden Atienza, MD; Initial Mental RFC Assessment, dated 04/03/2008, from Michael D'Adamo, PhD; Outpatient Hospital Records, dated 10/25/2005 to 05/07/2008, from EAST ORANGE VAH; Report of Contact – informational, dated 06/05/2008, from Joan Joynson, MD; Report of Contact – informational, dated 06/20/2008, from Robert Walsh, MD; Recon DDS Disability Worksheet, dated 05/01/2008 to 06/23/2008, from DDS; Medical Records, dated 01/04/2008 to 08/05/2009, from EO – VA NJ HCS. *See id.*

was not able to perform his past work, but the Vocational Expert's opinion constituted substantial evidence that the Plaintiff is capable of making a successful adjustment to gainful work that exists in significant numbers in the national economy.  Finding no basis to reverse the ALJ's determination, the Plaintiff's [10] Motion for Judgment of Reversal is DENIED, and the Defendant's [11] Motion for Judgment of Affirmance is GRANTED.

An appropriate Order accompanies this Memorandum Opinion.

**_This is a final, appealable order_.**

_/s/_
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE